UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Melissa Sites, | : | Case No. 1:09-cv-426 |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | |
| ADAMHS, et al, | : | |
| | : | |
| Defendants. | : | |

**ORDER**

Before the Court is Defendants' motion for summary judgment. (Doc. 15)  Plaintiff opposes the motion (Doc. 19), and Defendants have filed a reply.  (Doc. 22)  For the following reasons, the Court grants in part Defendants' motion with respect to Plaintiff's federal claims.

**FACTUAL BACKGROUND**

Melissa Sites worked for the Alcohol, Drug Addiction and Mental Health Services Board of Adams, Lawrence, and Scioto Counties ("ADAMHS") from 1996 until she was terminated in May 2009.  Sites alleges that her termination was in retaliation for her internal complaints about the agency's Executive Director, Tony Pollard, and her complaint to the Ohio State Auditor about certain financial improprieties Pollard had committed.

Sites has a B.S. degree in computer information systems which she obtained in 1994, and an M.B.A. degree received in May 2004.  She is currently taking accounting courses to enable her

to sit for the certified public accountant's examination.  She began working for ADAMHS in December 1996 as a financial assistant; her responsibilities in that job included managing the agency's accounts payable and receivable.  She received several promotions, and by 2003 she was the agency's Chief Fiscal Officer and Director of Business Operations.  ADAMHS paid for Sites' tuition to obtain her master's degree.  From 2003 through her termination in 2009, Sites' immediate supervisor was Tony Pollard.

In April 2006, the Board of Trustees of ADAMHS asked for input from staff members for Pollard's performance review.  Sites submitted written comments that criticized several aspects of Pollard's performance.  She cited an incident involving Pollard's alleged cancellation of a staff member's prepaid vacation that had been previously approved by a supervisor.  Sites believed that Pollard was not responsive to complaints about the physical condition of the office, including malfunctioning door locks and a light fixture that had fallen down from the ceiling.  She criticized Pollard for suddenly announcing decisions at meetings without consulting with staff, and threatening those who challenged him.  (See Doc. 21, Exhibit A-1)

When she received her own performance review from Pollard in January 2007, she was put on a performance improvement program to address what Pollard termed "interpersonal issues."  Sites'

-2-

written evaluation stated that Sites was occasionally "openly hostile to [Pollard] in front of others." (Sites Deposition Exhibit 8) Sites received a 3.5% pay raise instead of 5% which other staff members had received. Pollard told Sites that if she successfully completed the improvement program, she would receive another 1.5% raise. Sites completed the program and received the promised additional raise in May 2007.

Sites was unhappy about the negative comments in her review, and with the size of her raise. She wrote a formal rebuttal to Pollard's evaluation of her, contesting many of the incidents that gave rise to his negative comments. Pollard responded that he hoped Sites would accept her evaluation "in the manner for which it was intended. And, that you'll work on improving those areas of your performance mentioned above." (Sites Exhibit 10)

Pollard's December 13, 2007 performance review of Sites ranked her in the highest category in all areas. He noted that the interpersonal problems he had previously criticized had been substantially improved, and that Sites had "worked diligently" on her behavior. (Sites Deposition Exhibit 19) Despite the excellent review, Sites filed an internal agency grievance in February 2008. She complained that the ADAMHS Board had failed to adopt and implement regularized policies and procedures concerning salaries and compensation plans, and that salary decisions were "prone to an ad hoc determination" due to a lack

of written schedules.  She complained that she had been denied a

7.5% increase when she obtained her master's degree in May 2004.

She also complained that she received a 3.5% increase in December

2007; when she questioned Pollard, he told her that the Board had

set the 3.5% limit.  Sites alleged that other staff members had

received larger percentage raises.  After she complained to

Pollard about her raise, and asked for written confirmation of

compensation schedules, she alleged that Pollard raised her

salary another 1.5%.  She asked that the Board adopt regular

policies and procedures, that the pay range for her position be

increased one level, and that she receive a 7.5% pay increase,

retroactive to May 2004.  (Sites Deposition Exhibit 20)

Pollard responded to her grievance on March 17, 2008,

stating that the Board was in the process of adopting updated

Personnel Policies and was discussing a new salary compensation

plan.  He denied Sites' grievance concerning her request for a

7.5% increase, noting that the previous Executive Director's

practice of giving such raises to a few staff members did not

justify an increase for a degree that Sites' job description did

not require.  (Sites Exhibit 22) Pollard's decision was later

affirmed by the full Board.  (Sites Exhibit 24)

In June 2008, Sites sent a memo to Pollard complaining about

several communications and operations issues.  She described a

problem receiving her email, and said that she had not been

-4-

informed about Pollard's absences from the office.  She was told at the last minute about a Board meeting that she was required to attend in order to present financial reports, and she complained about miscommunication issues concerning staff members attending Board meetings.  (Sites Exhibit 23)  The record does not reflect any written response from Pollard to this memorandum.  Pollard completed Sites' annual review in December 2008, and Sites again received the highest rating in all job categories.  Pollard recommended that she receive the maximum available salary increase of 3%, "per Board policy."  (Sites Exhibit 25)

On March 23, 2009, Sites reviewed a payroll report and noticed a salary rate change for Scott Williams, the agency's Network/Systems Administrator.  Sites sent a note to Sue Shultz, the Human Resources Director, asking if a "personnel action" form had been completed for Williams, and whether there was a new salary schedule in place.  Shultz responded that yes, there was a form, and no, the Board had not changed the schedule since July 2008.  Sites then sent an email to both Schultz and Pollard, asking if agency policy requiring her to review personnel change forms or payroll reports had been changed.  She stated that Williams' salary increase exceeded the salary range that the Board had set for his position.  (Sites Exhibit 26)

After sending her email to Schultz and Pollard at 1:43 p.m., Sites decided to hold a staff meeting in a nearby park.  Sites

testified that it was a very nice day in late March and she thought it would be a nice thing to do.  She said that this was the first time she had held a meeting outside of the office. When she returned, Sites found an email from Pollard, sent at 2:05 p.m., responding to her questions about Williams and payroll policies.  Pollard told Sites that he would respond appropriately after his review.  He also stated: "In the meantime, in the future, if you're going to spend your time pointing out problems and criticizing my actions, I would appreciate it if you would also offer solutions.  Such an approach would be much more productive."  (Sites Exhibit 26)

The next day, March 24, at 4:21 p.m., Pollard sent Sites an email, stating he had observed her conducting an off-site staff meeting at the park the day before.  Pollard asked Sites if she had done so, and to respond "with either Yes or No."  (Sites Exhibit 30)  Sites responded "Yes" and attached the agenda she prepared for that meeting.  On March 26, Pollard asked Sites to meet with him about the off-site meeting; Sites asked for time to secure representation for herself, as she understood it would be a disciplinary meeting.  That meeting was held on March 30 between Pollard, Shultz, and the Board's attorney Alan Lemons, and Sites and her attorney David Beck.  Pollard presented a written reprimand to Sites, based on the unauthorized off-site staff meeting Sites held without his prior approval.  The

reprimand states that Sites had exceeded her authority, that the meeting was inappropriate, and had placed the Board at risk of a security breach, a worker's compensation issue, an outside emergency, or "any number of things" that might have happened in an uncontrolled area.  (Sites Exhibit 31)  The next day, March 31, Scott Williams lodged a written complaint with ADAMHS' human resources against Sites because she had questioned his pay raise in front of her subordinate staff, which Williams believed was inappropriate conduct.  (Sites Exhibit 33)

According to notes that Sites kept of these events, Pollard told her at the March 30 meeting that the reprimand was her second offense, with the first being the grievance she had filed in February 2008.  The next day, Sites claims that the Board's attorney Lemons told David Beck that Sites' first offense was the performance review from January 2007.  Lemons also allegedly told Beck that Sites "needs to realize that the Board is not going to fire Tony [Pollard] and she needs to back off and quit questioning things."  (Sites Exhibit 28)  There is no testimony or affidavit in the record from either Lemons or Beck concerning these conversations.

Sites filed an appeal on March 30 complaining of retaliatory discipline against her as a whistleblower.  She stated in that appeal that she had contacted the Ohio State Auditor's special investigation unit on March 2, 2009 concerning what she believed

to be improper time and expense reports submitted by Pollard and Shultz.  She alleged that the written reprimand was in retaliation for her previous complaints about Pollard and about Williams' salary increase.  Sites sent copies of her appeal to several Board members and to Pollard.[1]  Sites' attorney also wrote to Pollard on April 6, formally protesting the written reprimand.  (Pollard Deposition Exhibit 9)

On April 23, Pollard placed Sites on administrative leave with pay, pending an investigation of her violations of several sections of the ADAMHS' Personnel Policies.  Pollard stated that the investigation of Sites' "serious allegations" would be conducted by the Board's Labor Management attorney, Alan Lemons. (Sites Exhibit 35)

On May 26, Pollard wrote Sites to inform her that the Board had terminated her employment effective May 22.  His letter states: "The position you held was one with a strong fiduciary relationship to the Board and one of close personal trust.  Given your violations of that trust, the Board and I no longer have faith in you or your abilities."  (Sites Exhibit 36)

Sites filed a complaint the same day, May 26, 2009, in the Scioto County Common Pleas Court against ADAMHS and four members of the ADAMHS Board of Directors.  She alleged claims of

---

[1] Sites attempted to pursue her appeal with the Ohio State Personnel Board of Review, which she testified dismissed the appeal for lack of jurisdiction.  Sites Deposition at 220-221.

retaliation, a state "whistleblower" claim, violation of her due process rights, conspiracy, obstruction of justice, and negligent and intentional infliction of emotional distress.

Defendants removed the case to this Court on the basis of her federal claims, and they now seek summary judgment.  They argue that her retaliation claim fails because she did not engage in protected activity, and cannot demonstrate that the reasons ADAMHS has articulated for her termination are a pretext for unlawful retaliation.  Sites failed to follow the strict statutory requirements for an Ohio "whistleblower" claim, and her conspiracy and obstruction of justice claims fail to state a cognizable cause of action.  Defendants also argue that Sites' claims for emotional distress are fatally flawed under applicable Ohio law.

In her response, Sites does not oppose the dismissal of her emotional distress claims.  But she argues that the balance of her claims cannot be dismissed at this juncture due to the presence of disputed issues of material fact.

**ANALYSIS**

Summary Judgment Standards

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).  The party opposing a properly supported summary judgment motion "'may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial.'" Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (quoting First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253 (1968)).  The Court is not duty bound to search the entire record in an effort to establish a lack of material facts. Guarino v. Brookfield Township Trs., 980 F.2d 399, 404 (6th Cir. 1992); InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989), cert. den., Superior Roll Forming Co. v. InterRoyal Corp., 494 U.S. 1091 (1990).  Rather, the burden is on the non-moving party to "present affirmative evidence to defeat a properly supported motion for summary judgment...," Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479-80 (6th Cir. 1989), and to designate specific facts in dispute. Anderson, 477 U.S. at 250.  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Industries Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The court construes the evidence presented in the light most favorable to the non-movant and draws all justifiable inferences in the non-movant's favor. United States v. Diebold Inc., 369 U.S. 654, 655 (1962).

-10-

The court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.  <u>Anderson</u>, 477 U.S. at 249.  The court must assess "whether there is the need for trial — whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  <u>Id</u>. at 250.  "If the evidence is merely colorable, . . . , or is not significantly probative, . . . , the court may grant judgment."  <u>Anderson</u>, 477 U.S. at 249-50 (citations omitted).

As this case was removed to this Court based on Sites' assertion of federal constitutional claims, the Court will address those claims first.

<u>First Amendment Retaliation</u>

Sites' first claim for relief alleges that the Defendants retaliated against her for her complaints about Pollard and his management decisions.  She does not identify a federal statute that gives rise to her a retaliation claim, but she argues that her First Amendment free speech rights were violated when she was denied pay raises, put on paid leave, and then terminated from her position.

The free speech rights of public employees extend only to matters of "public concern," which the Supreme Court has defined as speech relating to political, social, or community issues of

-11-

concern.  Connick v. Myers, 461 U.S. 138, 146 (1983).  Moreover,

pursuant to Garcetti v. Ceballos, 547 U.S. 410 (2006), a public

employee must also establish that her speech was made as a public

citizen, and not pursuant to her duties as a public employee.

"[W]hen public employees make statements pursuant to their

official duties, the employees are not speaking as citizens for

First Amendment purposes, and the Constitution does not insulate

their communications from employer discipline."  Id. at 421.

    Sites generally contends that all of her complaints were

"matters of public interest," satisfying the first prong of this

claim.  The first incident she relies on, her critique of Pollard

in April 2006, clearly did not raise any public interest

concerns.  Her criticisms of Pollard's management style, his

treatment of other employees, or his lack of what Sites believed

to be effective communication skills, are not the types of speech

that fall under the rubric of "public interest."  In Connick, for

example, the Supreme Court held that an assistant district

attorney's solicitation of information about office morale, and

any pressures employees may have experienced to participate in

political campaigns, was not speech relating to matters of public

concern.  The same is true with respect to Sites' February 2008

grievance concerning the salary increase she did not receive

after she obtained her master's degree.  There is nothing in her

written grievance that concerns any public interest; her

-12-

complaints concern her own salary, and internal agency operating procedures.

Sites also argues that her retaliation claim is based on the events of March 2009 - her questions to Shultz and Pollard about Williams' salary increase, her report to the Ohio Auditor, and her March 30 appeal of her written reprimand.  Her questions about Williams and Board-approved salary schedules concerned agency personnel policies, and not with any public or political issue.  However, her description of her report to the Ohio Auditor about alleged wrongdoing by Pollard - abuse of time records, overstatement of mileage for travel, or failing to log hours of "telecommuting" - could fairly be characterized as issues of public concern, in that her report might implicate an improper expenditure of public funds.

However, Sites cannot demonstrate that her report to the Auditor was made as a public citizen, rather than pursuant to her duties as the Chief Fiscal Officer and Deputy Director for ADAMHS.  Garcetti clearly held that when government employees speak in the course and scope of their official duties, they are not "speaking as citizens for First Amendment purposes."  547 U.S. at 421.  Sites' appeal unambiguously states: "**As the Board's Chief Fiscal Officer**, I contacted the Ohio Auditor of State's Special Investigation Unit on March 2, 2009.  The Special Investigation Unit forwarded the complaint on to its Financial

Audit Group's regional office in Athens, Ohio, on March 11, 2009.

The complaint is to be part of the Board's Single Audit for the

period ended December 31, 2008." (Sites Exhibit 32; emphasis

added) And that 2008 audit report from the Ohio Auditor's Office

to ADAMHS included recommendations that addressed Sites'

concerns. Sites' reports to the Auditor, as her own

documentation clearly establishes, were made pursuant to her

duties as Chief Fiscal officer of ADAMHS, and not in her role as

a private citizen. Under Garcetti, therefore, Defendants are

entitled to judgment on her First Amendment retaliation claim

because the First Amendment does not apply to that speech.

Deprivation of Federal Due Process Rights

Sites' second claim for relief alleges that the Defendants

violated her federal procedural due process rights, as

articulated in Cleveland Board of Education v. Loudermill, 470

U.S. 532 (1985). There, the Supreme Court held that the 14th

amendment's guarantee of procedural due process includes the

assurance that a deprivation of property will "be preceded by

notice and opportunity for a hearing appropriate to the nature of

the case." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532,

538 (1986). Loudermill was an Ohio classified civil servant, who

could be terminated only for cause under the state's civil

service statute. The Court concluded that Loudermill had a

protected property right in his continued employment that

-14-

required pre-termination notice and an opportunity for a hearing.

A two-step analysis applies to claims of procedural due process violations.  First, the Court must determine if a protected property interest existed.  If it did, the Court must determine what procedures are constitutionally required to protect that interest.  Johnston-Taylor v. Gannon, 907 F.2d 1577, 1581 (6th Cir. 1990).

Property interests are "created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law -- rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."  Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972).  Sites must show "... more than an abstract need or desire" for the benefit at issue, and more than a unilateral expectation.  She must "... have a legitimate claim of entitlement" to her job.  Id.  A constitutionally protected property interest can be created by a state statute, a formal contract, or by a contract implied from the circumstances.  See Bailey v. Floyd County Bd. Of Ed., 106 F.3d 135, 141 (6th Cir. 1997).  But without a cognizable property interest in her position, Sites is not entitled to any pre-deprivation due process.  Id., citing Williams v. Commonwealth of Kentucky, 24 F.3d 1526, 1537 (6th Cir. 1994).

Defendants contend that Sites had no property interest in

-15-

her continued employment at ADAMHS, as her position was an unclassified civil service job under the Ohio civil service statute.  An employee in Ohio's unclassified civil service has no statutory right to continued employment, and serves at the pleasure of the appointing authority.  Vodila v. Clelland, 836 F.2d 231, 232 (6th Cir. 1987); Christophel v. Kukulinksy, 61 F.3d 479, 482 (6th Cir. 1995).  Sites does not allege that she had any contract with ADAMHS, or that she was covered by any collective bargaining agreement.  She does not deny that in February 2007, when Pollard responded to her critique of her evaluation, Pollard specifically reminded her of her unclassified status, and that she was an at-will employee.  (Sites Exhibit 20)

Sites contends that she did not understand what the term "unclassified" meant, or how that might affect her employment. She notes that her job description states that she is a "non-exempt" employee.  She also claims that her position is not listed in Ohio Rev. Code 124.11(A), which identifies unclassified civil service positions.  And she notes that the ADAMHS' grievance procedure gave her the right to grieve her reprimand, suspension and her termination.

The fact that Sites was classified as non-exempt for Fair Labor Standards Act purposes is not relevant to the question of her classification under Ohio's civil service statutes.  Her position at the time of her termination was Chief Fiscal Officer

-16-

and Director of Business Operations for ADAMHS.  Contrary to

Sites' argument, Ohio Rev. Code 124.11(A)(18) states that

"Executive directors, deputy directors, and program directors

employed by boards of alcohol, drug addiction, and mental health

services under Chapter 340. of the Revised Code, and secretaries

of the executive directors, deputy directors, and program

directors" are unclassified civil service positions.  Sites'

position, Director of Business Operations and Chief Fiscal

Officer, unambiguously falls within that statutory definition.

Sites' claim that she did not understand what "unclassified"

meant is irrelevant in view of this express statutory definition

that includes her position.  And her alleged lack of

understanding cannot form a basis for a **legitimate** claim of

entitlement to her job.

     Sites has not offered any other basis upon which this Court

could conclude that she had a constitutionally protected property

interest in her continued employment with ADAMHS.  Her claim that

Defendants violated her federal procedural due process rights

therefore fails on the merits.

<u>State Law Claims</u>

     Sites alleges a number of state law claims for retaliation

and as a "whistleblower," for civil conspiracy and for

obstruction of justice.  The Court expresses no opinion on the

merits of any of these claims.  Dismissal of supplemental state

law claims after dismissing federal claims before trial is
discretionary, but is generally the rule.  See Taylor v. First of
Am. Bank-Wayne, 973 F.2d 1284, 1287 (6th Cir. 1992).  Here, the
state claims raise complex and perhaps evolving issues of Ohio
law, and are better addressed by the Ohio courts.  Therefore, the
Court will dismiss the state law claims without prejudice to
refiling in an appropriate Ohio forum.

### CONCLUSION

For all of the foregoing reasons, Defendants are granted
summary judgment on Plaintiff's federal claims of First Amendment
retaliation and Fourteenth Amendment procedural due process
deprivation, and on her state law claims of intentional and
negligent infliction of emotional distress.  Those claims are
dismissed with prejudice.  Plaintiff's state law claims for
retaliation, whistleblower claims, conspiracy, and obstruction of
justice are dismissed **without** prejudice.

SO ORDERED.

THIS CASE IS CLOSED.

DATED: November 30, 2010        s/Sandra S. Beckwith
                                Sandra S. Beckwith
                                Senior United States District Judge